IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYNNA FISH, | ) | CASE NO. 1:10 CV 2009 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by plaintiff Brynna Fish seeking judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has filed an answer[3] and the transcript of the administrative proceedings.[4] Pursuant to my amended initial

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] ECF # 1.

[3] ECF # 19.

[4] ECF # 20.

order,[5] the parties have briefed their positions[6] and filed supporting fact sheets[7] and charts.[8] The parties have participated in a telephonic oral argument.[9]

For the reasons that follow, I will find that the decision of the Commissioner was not supported by substantial evidence and so must be reversed and remanded for further proceedings.

## Facts

**A.   Background facts**

Fish, who was born in 1957[10] and has both a bachelor's and master's degree in social work,[11] worked previously as a director of public relations and as a director of social welfare for the Jewish Family Services agency in Cleveland.[12]

---

[5] ECF # 18.

[6] ECF # 27 (Fish's brief); ECF # 32 (Commissioner's brief).

[7] ECF # 21 (Fish's fact sheet).

[8] ECF # 27, Attachment 1 (Fish's charts); ECF # 32, Attachment 1 (Commissioner's charts).

[9] ECF # 35.

[10] Transcript ("Tr.") at 135.

[11] *Id.* at 300.

[12] *Id.* at 67.

**B.     Decision of the ALJ**

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Fish had severe impairments consisting of chronic fatigue syndrome ("CFS"), fibromyalgia, migraine headaches, asthma, sinus infections, and immunoglobulin deficiency.[13] The ALJ made the following finding regarding Fish's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).[14]

Given that RFC, the ALJ found Fish capable of her past relevant work and, therefore, not under a disability.[15]

**C.     Issues on judicial review**

Fish asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Fish presents three issues for decision:

---

[13] *Id.* at 14.

[14] *Id.*

[15] *Id.* at 16.

- Whether the ALJ properly evaluated and assigned sufficient weight to the opinions of two treating physicians – Drs. Hostoffer and Kriegler?[16]

- Whether the ALJ performed a legally sufficient evaluation of Fish's credibility and symptoms, particularly her fatigue, the frequency and severity of her infections and headaches, and their impact upon sustained activity?[17]

- Whether the ALJ's failure to recognize Fish's carpal tunnel syndrome as a severe impairment requires remand to determine her hand limitations and their impact upon sedentary work?[18]

## Analysis

### A.  Standards of review

#### 1.  *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[16] ECF # 27 at 1.

[17] *Id.*

[18] *Id.* at 1-2.

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.  *Treating physician rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

---

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on

---

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[38] Second, the ALJ must identify for the record evidence supporting that finding."[39] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[40]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive

---

[36] *Id.*

[37] *Id.*

[38] *Wilson*, 378 F.3d at 546.

[39] *Id.*

[40] *Id.*

controlling weight.[41] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[42] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[43] or that objective medical evidence does not support that opinion.[44]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[45] The Commissioner's *post hoc* arguments on judicial review are immaterial.[46]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[41] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[44] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[45] *Blakley*, 581 F.3d at 407.

[46] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[47]

- the rejection or discounting of the weight of a treating source without assigning weight,[48]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[49]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[50]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[51] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[52]

---

[47] *Blakley*, 581 F.3d at 407-08.

[48] *Id.* at 408.

[49] *Id.*

[50] *Id.* at 409.

[51] *Hensley*, 573 F.3d at 266-67.

[52] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[53] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[54] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[55]

In *Cole v. Astrue*,[56] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[57]

**B.     Application of standard – The treatment of the opinions of Drs. Kriegler and Hostoffer did not comply with the treating physician rule and good reasons requirement.**

In this case, Fish had substantial treating relationships with two physicians – Jennifer Kriegler, M.D., a neurologist; and Robert W. Hostoffer, D.O., an allergist/immunologist.

---

[53] *Blakley*, 581 F.3d 399.

[54] *Id.* at 409-10.

[55] *Id.* at 410.

[56] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[57] *Id.* at 940.

Dr. Kriegler treated Fish for migraine headaches from 2007 to 2009,[58] and Fish saw Dr. Hostoffer from 2006 to 2009 for symptoms related to fatigue.[59] The record, as noted, contains extensive treatment notes from each physician, and both physicians gave detailed RFC opinions.[60] Simply put, each physician opined that limitations arising from Fish's impairments made it impossible for her to do sustained work for a full workday and over a five-day week, with Fish's fatigue requiring her to take unscheduled breaks about every 20 minutes[61] and to miss about four days per month from work.[62]

By contrast, medical expert Frank Cox, M.D. testified at the hearing that there were very few objective findings to support Fish's complaints of chronic fatigue and migraine headaches.[63] Dr. Cox further stated that while there is evidence that Fish formerly was infected with the Epstein-Barr virus that causes CFS, there was "an almost lack of objective findings" to show that she is now suffering from CFS.[64]

In a fairly sparse analysis, the ALJ took note of Dr. Kriegler in a brief reference of less than a sentence in length, observing simply that Dr. Kriegler "noted the claimant's

---

[58] *See*, ECF # 27, Attachment 1 (charts) at 4 (citing record).

[59] *Id.* at 5-6.

[60] Tr. at 1002-06 (Dr. Kriegler); 1008-11 (Dr. Hostoffer).

[61] *Id.* at 1002.

[62] *Id.* at 1010.

[63] Tr. at 15.

[64] *Id.*

history of migraines without aura or other indications of neurological abnormality."[65] As such, the ALJ did not identify Dr. Kriegler as being a treating source and did not acknowledge on the record that Dr. Kriegler had offered an RFC opinion in addition to compiling a record of treatment notes. Further, the ALJ offered no analysis or statement of reasons as to why the RFC opinion of a treating source went unmentioned.

Dr. Hostoffer fares somewhat better. In the ALJ's decision, Dr. Hostoffer is the only opinion specifically mentioned in the section of the decision discussing "the opinion evidence."[66] That said, however, the ALJ does not there identify Dr. Hostoffer as a treating source, but does definitively "reject[s]" Dr. Hostoffer's opinion because it "is not supported by signs, symptoms and laboratory findings showing the claimant to have disabling impairments resulting from anatomical, physiological or laboratory abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[67]

As to Dr. Kriegler, it is clear, as noted above, that the ALJ does not address her opinion in conformity with the treating physician rule and good reason requirement. Despite a valiant attempt by the Commissioner to argue that the failure to cite to an opinion is not proof that an opinion was not considered,[68] Dr. Kriegler is nowhere acknowledged as a

---

[65] *Id.*

[66] *Id.* at 16.

[67] *Id.*

[68] An argument offered on the strength of case authority more than 20 years old that obviously does not take account of the Sixth Circuit's plain, and frequently repeated, teachings on this point since its 2004 decision in *Wilson*.

-13-

treating source, and no specific weight is accorded to her opinion that was not even mentioned (the single reference was to the content of her treatment notes).

These defects are not inconsequential. As Fish states, the functional limitations described by Dr. Kriegler are central to her disability claim,[69] and the total failure to discuss and analyze these limitations is not only a denial of her due process rights, as the Sixth Circuit teaches, but it also undermines the RFC finding that is the basis for the ALJ's decision. This finding of itself is a basis for remand in this case.

In a different way, a similar problem occurs with the ALJ's handling of Dr. Hostoffer's opinion. The ALJ's complete rejection of Dr. Hostoffer's opinion on the grounds that it lacked any foundation in the medical evidence is not supported by the record and so does not conform to the good reasons requirement.

Specifically, as was discussed in the oral argument and stated in Fish's brief, the record shows that Fish's complaints to Dr. Hostoffer concerning persistent fatigue[70] are supported by evidence in Dr. Hostoffer's own treatment notes of swollen and painful lymph

---

[69] *See*, ECF # 27 at 13.

[70] It should be noted that Dr. Hostoffer did not diagnose Fish with CFS. Tr. at 1008. Rather, he concluded from the evidence that she "maybe" has CFS, but that it is likely that she has an immune deficiency exacerbated by frequent infections. For purposes of evaluating Dr. Hostoffer's RFC opinion, this caution in making a definitive diagnosis of CFS is, or should be, a factor in enhancing the credibility of his opinion. Further, the absence of a definitive diagnosis of CFS does not detract from the fact that the record contains medical and laboratory findings, not discussed by the ALJ, consistent with Fish's symptoms of fatigue.

nodes,[71] as well as a sore throat[72] – both medical signs that SSR 99-2p explicitly lists as being associated with CFS.[73] In addition, Dr. Kriegler's treatment notes also record enlarged lymph nodes.[74] Moreover, laboratory results from Richard Stein, M.D., a treating rheumatologist, also document that Fish tested positive for the Epstein-Barr virus,[75] a laboratory finding that SSR 99-2p states can establish the presence of a medically determinative impairment due to CFS.[76]

In short, the ALJ – to be charitable – more than overstates the case by saying that a good reason for completely "reject[ing]" the opinion of Dr. Hostoffer on Fish's RFC is because that opinion "is not supported by signs, symptoms and laboratory findings."[77]

---

[71] Tr. at 428, 412.

[72] *Id*. at 704, 453.

[73] SSR 99-9p at 3. "One or more of the following medical signs clinically documented over a period of at least 6 months establishes the existence of a medically determinable impairment for individuals with CFS:
- palpably swollen or tender lymph nodes on physical examination;
- nonexudative pharyngitis;
- persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points;
- any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record.

[74] Tr. at 327.

[75] *Id.* at 958.

[76] SSR 99-2p at 3.

[77] Tr. at 16.

-15-

Further, and just as important, the ALJ's decision to completely adopt the conclusions of the medical expert, Dr. Cox, over those of the treating sources is also troublesome. Dr. Cox was admittedly no expert in migraines or chronic fatigue,[78] yet the ALJ fully accepted his conclusions that Fish's migraines were unsupported by any medical findings, and that Fish's complaints about fatigue and even the presence of Epstein-Barr antibodies merely showed the existence of a past infection, not a current problem.[79]

Although under the regulations it is certainly possible for an ALJ to credit the opinion of a consultant over that of a treating source,[80] "the regulations do not allow the application of greater scrutiny to a treating source opinion as a means to justify giving such an opinion little weight. Indeed, they call for just the opposite."[81] Thus, the supposed total lack of support in the record for the opinion of Dr. Hostoffer cannot be a good reason for completely rejecting that opinion and adopting that of Dr. Cox where Dr. Cox's opinion was not similarly scrutinized, and with special attention on articulating the basis for why a non-treating consultant's opinion is to be preferred to that of a treating specialist.

In the end, it may well be that after proper analysis neither the opinions of Dr. Kriegler nor Dr. Hostoffer will be entitled to controlling weight. But, as the Sixth Circuit

---

[78] *See*, Tr. at 57.

[79] Tr. at 15.

[80] SSR 96-6p; *Gayheart v. Comm'r of Soc. Sec.*, No. 12-3553, 2013 WL 896255, at *13 (6th Cir. March 12, 2013) (citing ruling).

[81] *Gayheart*, 2013 WL 896255, at *13.

explicitly holds, the reviewing court should not be hesitant to remand where the Commissioner has not provided good reasons for the weight given to the opinions of a treating source.[82]

Because the matter is to be remanded on this basis, the remaining issues on judicial review are not addressed.

On remand, the ALJ must acknowledge Drs. Kriegler and Hostoffer as treating sources; decide if their RFC opinions should receive controlling weight; if not, assign appropriate weight to those opinions, and give adequate "good reasons" for the weight assigned.

## Conclusion

For the reasons stated, the Court concludes that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed, and the matter remanded for further proceedings.

IT IS SO ORDERED.

Dated: March 14, 2013                                s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[82] *Cole*, 661 F.3d at 939.